I agree with the majority as to its analysis and disposition of assignments of error I and II, and I agree with the majority as to its disposition of assignments of error III, IV and V. However, I disagree with the analysis of the majority as to assignments of error III, IV and V. I am writing separately so as to make it clear that I would not be concurring with the disposition of assignments of error III, IV, and V had it not been for the testing of the last ten bottles in Batch 97220 in December of 1997, subsequent to the solution certification by the Director of Health in September of 1997. Pursuant to Revised Code3701.143, the Director of Health shall determine techniques or methods for chemically analyzing a person's blood, urine, breath or other bodily substance in order to ascertain the amount of alcohol therein. The Director of Health has promulgated rules to help accomplish the purpose of this statute. However, the only administrative regulation which refers to calibration solutions used to test the accuracy of breath testing instruments is O.A.C.3701-53-04(A) which reads: "[a]pproved evidential breath testing instruments shall be checked for calibration every seven days by a senior operator using a solution of ethyl alcohol approved by the director of health and using the calibration check list for the instrument being checked, as set forth in the Appendices (A) to (G) to this rule . . ." (Emphasis added)
This regulation does not specify the manner in which the instrument check solution is to be prepared or the manner in which the solution is to be certified by the Director of Health. However, based upon due process grounds, it is still necessary that sound scientific procedures be used to certify to law enforcement the amount of ethyl alcohol in each batch of solution. According to the testimony of Dr. Sutheimer (Transcript at page 82) sound scientific procedures require that at least six to eight bottles of this 1,800 bottle batch of solution be randomly selected and tested to determine the target value of the batch. In originally setting the target value of the batch, the manufacturer of the batch (Steifel) had only tested three bottles. The Department of Health had only tested four bottles after the batch was received from the manufacturer. Therefore, Dr. Sutheimer concluded that "[n]either the manufacturer nor the Department of Health had analyzed enough bottles to set a true target for batch number 97220" as of the September 30, 1997, date that the Director of the Department of Health certified the solution. Transcript at Page 55. The fact that the Department of Health did not find out until November 21, 1997, that Steifel had tested only three bottles in the batch when setting the target value makes the certification of the batch on September 30, 1997, by the Director of Health all the more disconcerting. Steifel had been stonewalling the Department of Health for some time, and instead of the Department of Health independently establishing a target value for the batch and/or holding up certification procedures on the batch until cooperation from Steifel could be obtained voluntarily or involuntarily through legal process, the Director of Health blindly certified the batch. Too much was and is at stake for the Director of Health to be careless or haphazard in certifying the testing solutions for the breath testing instruments. In addition, I have serious concerns about the accessibility of the records and results of the individual gas chromatograms used in the analysis of the batch. These chromatograms should be made available for viewing by defense counsel or an expert on defendant's behalf.